IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **Trinity River Resources, LP** | ) | Case No. 16-10472 |
| | ) | |
| Debtor. | ) | |

**EMERGENCY MOTION FOR AN ORDER
(I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL
OF EXISTING SECURED LENDERS, (II) GRANTING ADEQUATE
PROTECTION FOR USE THEREOF, AND (III) SCHEDULING FINAL HEARING**

Trinity River Resources, LP, the above-captioned debtor and debtor in possession (the "Debtor") hereby moves (the "Motion") for entry of an interim order, substantially in the form filed herewith (the "Interim Order") and a final order (the "Final Order," and together with the Interim Order, the "Orders"), (i) authorizing the Debtor's use of cash collateral of existing secured lenders, (ii) granting adequate protection for use thereof, and (iii) scheduling a final hearing and in support thereof, respectfully represents as follows:

**I. JURISDICTION & VENUE**

1. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157. Venue of this chapter 11 case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are Bankruptcy Code §§ 105, 361, 362, 363 and Bankruptcy Rules 2002, 4001, and 9014.

**II. RULE 4001 STATEMENT**

2. By this motion the Debtor seeks authority to use the Cash Collateral of the Secured Lenders (both as defined herein). The Debtor seeks to use such Cash Collateral as working capital in the operation of its business for the purposes specified in, and at least for the

1

#5174724.2

period defined in, the attached budget. As adequate protection for the diminution in value of Cash Collateral, the Debtor will (i) maintain the value of its business as a going-concern, (ii) provide replacement liens upon now owned and after-acquired cash to the extent of any diminution in value of Cash Collateral, and (iii) provide superpriority administrative claims to the extent of any diminution in value of Cash Collateral.

### III. BACKGROUND

#### A. Business Description

3. On April 15, 2016 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court"), a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code") commencing these chapter 11 cases. The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no committee has yet been appointed or designated.

4. The Debtor was established in 2010 as an oil and gas exploration and production company with a focus on East Texas non-operated working interests. Specifically, the Debtor owns approximately 63,000 net acres in the established Woodbine sands and Austin Chalk formations throughout Polk, Tyler, and Jasper counties.

5. The Debtor's current net production is approximately 3,000 boe/d comprised of 43.5% oil and 56.5% rich gas from approximately 164 wells (27 vertical Woodbine wells and 137 horizontal Austin Chalk wells). The Debtor's working interests are primarily operated by its non-debtor affiliate BBX Operating, LLC.

**B.     Description of Secured Debt**

6.     The Debtor is party to that certain Credit Agreement in the amount of $200,000,000, dated November 23, 2010, among itself, as borrower, General Electric Credit Corporation, as, among other things, administrative agent, and certain lenders party thereto (the "Secured Lenders") (as amended and restated on March 26, 2014, and modified from time to time thereafter, the "Credit Facility"). The Credit Facility is secured by a first priority lien on substantially all of the Debtor's property.

7.     As of the Petition Date, approximately $116,600,000 in principal was outstanding under the Credit Facility.

## IV. RELIEF REQUESTED

8.     By this Motion, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, the Debtor requests that the Court enter the Orders (i) approving the Debtor's use of Cash Collateral, (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral, and (iii) scheduling a final hearing (the "Final Hearing") for this Court to consider entry of the Final Order authorizing and approving the relief requested in this Motion.

## V. BASIS FOR RELIEF

9.     Under 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in such cash collateral consents or if the Court, after notice and a hearing, authorizes the use of the cash collateral. Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

10.     Bankruptcy Rules 4001(b) and (d) govern the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration

3

of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization.

11. At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.

12. As of the Petition Date, the Debtor does not have unencumbered cash sufficient to fund its business operations and pay present operating expenses. Therefore, the Debtor has an urgent need for the immediate use of Cash Collateral pending a final hearing on this Motion.

13. The Debtor faces "immediate and irreparable harm to the estate" absent the emergency consideration of the relief requested in this motion. The immediate use is necessary, and it will stabilize the Debtor's operations and revenue by paying ordinary, postpetition operating expenses, and any court approved prepetition expenses that may be at issue. Without authority to use Cash Collateral, the Debtor will not be able to function as a going concern, and will not be able to proceed to consideration of a plan of reorganization. Accordingly, authority to use Cash Collateral is necessary to avoid the shutdown of the Debtor's business, and will be in the best interests of the Debtor, its estate and its creditors.

14. Through this Motion, the Debtor intends to provide adequate protection, to the extent of the aggregate diminution in value of Cash Collateral from and after the Petition Date, to Secured Lenders, for the use of the Cash Collateral by:

    a. maintaining the going concern value of the collateral by using the Cash Collateral to continue to operate the business and administer these cases;

    b. providing Secured Lenders postpetition replacement liens pursuant to 11 U.S.C. § 361(2) in the Debtor's accounts receivable, including cash generated or received by the Debtor subsequent to the Petition Date, but

only to the extent that the Secured Lenders had valid, perfected prepetition liens and security interests in such collateral as of the Petition Date, and subject to the Carve-Out (as defined in the Proposed Interim Order filed herewith); and

c. providing to the Secured Lenders superpriority claims pursuant to 11 U.S.C. § 507(b) over all administrative expense claims and unsecured claims, of any kind or nature whatsoever, whether in existence on or arising after the Petition Date, against the Debtor, subject only to the Carve-Out.

15. The continuation of the Debtor's operations presents the best opportunity for the Secured Lenders to receive the greatest recovery on account of their claims. Accordingly, the Debtor submits that use of the Cash Collateral will allow the Debtor to continue its operations, preserve the Secured Lenders' collateral and thereby protect the Secured Lenders' interests. Courts have consistently recognized that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected); *see also In re 499 W. Warren St. Assocs., Ltd. P'ship,* 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); *In re Stein,* 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

## VI. REQUEST FOR INTERIM AND FINAL RELIEF

16. An immediate need exists for the Debtor to obtain approval of the use of Cash Collateral in order to meet key expenses as described above and as identified in the interim budget ("Interim Budget") attached hereto as **Exhibit A**.[1] Without the immediate use of the Cash Collateral for an interim period, the Debtor will essentially be forced to cease production. Obviously this would have a severe negative impact upon the Debtor's going concern value and ability to successfully create value for all creditors. A complete shutdown of the Debtor's business, even for a short period, would result in the loss of employees, and creditors and equity receiving substantially less from the enterprise than going concern value. Accordingly, it is imperative that a preliminary hearing be set immediately.

17. Pursuant to Bankruptcy Rule 4001, the Debtor requests that the Court set a preliminary hearing on the use of Cash Collateral, and that at such preliminary hearing, the Court authorize the temporary use of Cash Collateral consistent with the Interim Budget, in order to avoid immediate and irreparable harm to these bankruptcy estates pending a final hearing.

18. The Debtor also requests a final hearing as soon as the Court's schedule permits, following 14 days after service of this Motion.

---

[1] The Debtor is preparing a longer term budget and will file such supplemental budget when available.

#5174724.2

## VII. PRAYER

WHEREFORE, premises considered, the Debtor requests that this Court enter an Order, in substantially the form filed herewith, authorizing the Debtor to use Cash Collateral as described herein, setting the Motion for a final hearing, and granting such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

**BRACEWELL LLP**

By: */s/ William A (Trey) Wood III*
William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bracewelllaw.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bracewelllaw.com
Chelsea R. Dal Corso
Texas Bar No. 24092316
Chelsea.DalCorso@bracewelllaw.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

**PROPOSED COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION**

#5174724.2

**CERTIFICATE OF SERVICE**

      The undersigned certifies that on April 22, 2016, a true and correct copy of this document was served by electronic means as listed on the Court's ECF noticing system and via electronic mail or facsimile upon all parties on the attached Master Service List.

                                                        */s/ Chelsea R. Dal Corso*
                                                         Chelsea R. Dal Corso

#5174724.2