**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **Trinity River Resources, LP** | ) | Case No. 16-10472 (TMD) |
| | ) | |
| **Debtor.** | ) | |

**DECLARATION OF MATTHEW J. TELFER
IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY PLEADINGS**

I, Matthew J. Telfer, state as follows:

### I. INTRODUCTION

1. I am a manager of Trinity River Resources GP, LLC, the general partner of Trinity River Resources, LP (the "Debtor"). I have served as manager of the Debtor's general partner since formation of the Debtor, and in such capacity I am familiar with the Debtor's day-to-day operations, business affairs, books and records. I am above 18 years of age and I am competent to testify.

2. I submit this declaration (the "Declaration") to assist the Court and other parties-in-interest in understanding the circumstances that compelled the commencement of this chapter 11 case and in support of (i) the Debtor's voluntary petition for relief under chapter 11 of the Bankruptcy Code filed on April 15, 2016 (the "Petition Date") and (ii) the relief, in the form of motions, that the Debtor has requested of the Court (the "First Day Pleadings"). Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant First Day Pleading.

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with management of the Debtor's general partner and other of the Debtor's advisors, my review of relevant documents, or my opinion based upon my

#5176130.3

experience and knowledge of the Debtor's assets, liabilities, operations and financial condition. I am authorized to submit this Declaration on behalf of the Debtor and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## II. THE DEBTOR'S BUSINESS OPERATIONS

4. The Debtor was established in 2010 as an oil and gas exploration and production company with a focus on East Texas working interests. Specifically, the Debtor owns approximately 63,000 net acres in the established Woodbine sands and Austin Chalk formations throughout Polk, Tyler, and Jasper counties.

5. The Debtor's current net production is approximately 3,000 boe/d comprised of 43.5% oil and 56.5% rich gas from approximately 164 wells (27 vertical Woodbine wells and 137 horizontal Austin Chalk wells). The Debtor's working interests are primarily operated by its non-debtor affiliate BBX Operating, LLC.

## III. CAPITAL STRUCTURE[1]

6. The Debtor is party to that certain Credit Agreement in the amount of $200,000,000, dated November 23, 2010, among itself, as borrower, General Electric Capital Corporation, as, among other things, administrative agent ("GE"), and certain lenders party thereto (the "Secured Lenders") (as amended and restated on March 26, 2014, and modified from time to time thereafter, the "Credit Facility"). The Credit Facility is secured by a first priority lien on substantially all of the Debtor's property.

7. As of the Petition Date, approximately $116,600,000 in principal was outstanding under the Credit Facility.

---

[1] This Declaration contains a summary only and is not intended to alter the actual terms of the Credit Facility. In the event there is a discrepancy between the terms in this Declaration and the terms of the Credit Facility, the Credit Facility controls.

#5176130.3

-3-

## IV. EVENTS LEADING TO CHAPTER 11 FILING

8. With the precipitous drop in commodity prices in late 2014 and early 2015, GE announced in the Spring of 2015 that, pursuant to a redetermination under the Credit Facility, the Debtor's borrowing base was reduced to $105,000,000. At the time, the Debtor had drawn approximately $124,000,000 under the Credit Facility.

9. Subsequent to the borrowing base redetermination, the Debtor began to explore alternatives for refinancing the Credit Facility and restructuring its balance sheet. Meanwhile, GE began exercising its default remedies, including acceleration of indebtedness, exercising control over the Debtor's bank accounts, and posting the Debtor's assets for foreclosure. Prior to a scheduled January 2016 foreclosure sale, the Debtor and GE entered into a bridge agreement pursuant to which, among other things, the Debtor agreed to retain a sales agent (Robert Urquhart of Scotiabank) to market and sell the Debtor's assets. The Debtor ran the marketing and sale process from January 4, 2016 to March 31, 2016. On March 31, 2016, received 14 initial bids from interested parties. At GE's request, the Debtor filed bankruptcy so that it could complete the sale process. In exchange for Debtor's agreement to file bankruptcy, GE has consented to use of cash collateral on an interim basis and has agreed to negotiate in good faith a 13 week cash collateral/DIP financing budget to allow the Debtor sufficient time to complete the sale process.

## V. FIRST DAY PLEADINGS

**A. Emergency Motion for an Order (I) Authorizing the Debtor to Use Cash Collateral of Existing Secured Lenders, (II) Granting Adequate Protection for Use Thereof, and (III) Scheduling Final Hearing**

10. The Debtor has an immediate need to use the Cash Collateral of the Secured Lenders. Without the use of this Cash Collateral, the Debtor will not be able to pay the costs and expenses of operating its business, and costs that arise in the administration of this bankruptcy

-3-

#5176130.3

case. As of the Petition Date, the Debtor does not have sufficient unencumbered cash to fund its business operations and pay present operating expenses. If the Debtor is unable to obtain interim authority to use Cash Collateral as working capital in the operation of its business, the Debtor will be unable to meet basic operation expenses, which would have a devastating effect on the value of the Debtor's business and other assets and, ultimately, the Debtor's ability to successfully reorganize. Therefore, the Debtor faces immediate and irreparable harm if it is not granted authority to use Cash Collateral in accordance with the motion and interim order.

11. The interim order protects any interest of the Secured Lenders in the Cash Collateral by providing them adequate protection to the extent of the aggregate diminution in the value of Cash Collateral by maintaining the going concern value of the collateral; providing a postpetition replacement lien; and providing a superpriority claim. As such, any interest of the Secured Lenders in the Cash Collateral is adequately protected through the terms of the interim order.

12. Accordingly, the Debtor requests authority to use the Cash Collateral on an interim basis in accordance with the proposed interim budget and interim order attached to the Cash Collateral Motion, set a final hearing on the Debtor's request to use Cash Collateral, and provide adequate protection to Secured Lenders in accordance with the terms of the interim order.

B. **Emergency Motion for Order Authorizing Debtor to (A) Remit Royalty and Working Interest Payments to Royalty and Working Interest Holders and (B) Continue Such Payments Post-Petition in the Ordinary Course of Business**

13. The Debtor seeks authority to make all payments due to third party royalty and working interest holders (collectively, the "Royalty and Working Interest Owners") in the normal course of business, regardless of whether such royalty is due for production before or

-4-

#5176130.3

after the Petition Date. The Debtor's oil and gas leases are the foundation of its business and the failure to pay or continue to pay amounts owed to Royalty and Working Interest Owners would result in an increased risk of liens, litigation, or other actions by the Royalty and Working Interest Owners. This would burden the Debtor's assets, diminish their value, and distract the Debtor from its ultimate goal of reorganization. The amounts to be paid are de minimis ($5,000) and represent separate property of the Royalty and Working Interest Owners.

## VI. CONCLUSION

14. Approval of the First Day Pleadings is in the best interest of the Debtor, its estate and its creditors.

15. I have reviewed this Declaration and hereby declare under penalty of perjury that the foregoing is true and correct and within my own personal knowledge.

16. Executed this 25th day of April, 2016.

_____
Matthew J. Telfer
Manager, Trinity River Resources GP, LLC